**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JEFFREY STEIDLE<br>505 Legion Drive<br>West Chester, PA 19380<br><br>*Plaintiff,*<br>v.<br><br>UNITED STATES LIABILITY<br>INSURANCE CO., INC.<br>1190 Devon Park Drive<br>Wayne, PA 19087<br><br>*Defendant.* | CIVIL ACTION<br><br>No. ________________<br><br>JURY TRIAL DEMANDED |

**CIVIL ACTION COMPLAINT**

The above-named Plaintiff, by and through the undersigned counsel, hereby avers as follows:

## I. Introduction

1. Plaintiff, Jeffrey Steidle, (hereinafter "Plaintiff") has initiated the instant action to recover damages for unlawful retaliation in violation of the Family and Medical Leave Act of 1993 and other applicable law by Defendant United States Liability Insurance Co., Inc. (hereinafter "Defendant") and the individual Defendants named herein.

## II. Parties

2. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.
3. Plaintiff is an adult individual with an address as captioned above.
4. Defendant is a corporation with an address as captioned above.
5. Defendant is an insurance company.
6. Defendant acted through its agents, servants and employees, all of whom acted in the course and scope of their employment at all times relevant herein.

## III. Jurisdiction and Venue

7. The foregoing paragraphs are incorporated in their entirety as if set forth in full.

8. The Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over it to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

9. The Court may exercise original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of rights conferred under Federal law (including the Family and Medical Leave Act).

10. The Court may also maintain supplemental jurisdiction over any state law claims set forth herein (or later added via amendment) pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to the claim(s) within the Court's original jurisdiction that they form part of the same case or controversy.

11. Venue is properly laid in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because: (a) Defendant resides in and/or conducts business in this judicial district; and (b) because the acts and omissions giving rise to the claims set forth herein, including specifically: (i) Plaintiff's employment with Defendant; and (ii) the adverse employment actions taken by Defendant against Plaintiff occurred exclusively in this judicial district.

## IV. Factual Background

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. Plaintiff worked for Defendant as a commercial lines general liability claims examiner from 2013 to September 14, 2022, when Defendant terminated his employment.

14. Plaintiff suffers from post-traumatic stress disorder (PTSD).

15. Post traumatic stress disorder is recognized by the EEOC as a disability under the Americans with Disabilities Act (ADA). *See, e.g.,* EEOC-NVTA-2016-11.

16. Plaintiff required medical leave and treatment as a result of his condition as noted below.

17. Plaintiff's supervisors were aware of his medical condition.

18. Plaintiff first sought assistance with his condition in May or June of 2020, after he was asked to move to a new team supervised by one Annie Lacey.

19. Plaintiff began having issues with his PTSD in May or June of 2020 and advised Ms. Lacey that he was suffering from PTSD and would be receiving additional treatment and possibly changing medications.

20. Ms. Lacey inquired as to why Plaintiff's condition affected his ability to do his job, and he explained his condition and its effects to her.

21. Plaintiff received a negative review from Ms. Lacey in September of 2020 as a result of her learning about his PTSD.

22. Plaintiff had received 8 years of stellar reviews before this point.

23. Plaintiff went out on FMLA leave from October 2020 until December 21, 2020.

24. During this time frame, Plaintiff's raise and bonus were cut by 50%.

25. When Plaintiff returned from leave, he was reassigned to his prior team (supervised by one Janet Helbig).

26. In January of 2021, Plaintiff received an "Outlook" email invitation for a date set 5 days in the future to go over a list of alleged "issues" his supervisors claimed they had found in his claim files.

27. Plaintiff's supervisors were well aware that *any* claim representative whose files they reviewed would have some type of alleged "issues" to deal with.

28. Plaintiff's files were reviewed by Ms. Lacey to set him up for firing, discipline or other adverse action as a result of his use of FMLA leave and his disability.

29. In May of 2021, Plaintiff made 2 requests for accommodation: (a) to work from home; and (b) to work 7 a.m. to 3 p.m.

30. The foregoing requests were denied despite the fact that other employees - without PTSD - were given these accommodations.

31. Plaintiff's supervisors advised him he would need a doctor's note to support his request, and he obtained one.

32. At this point, Plaintiff's request was granted, but he was told the accommodation would only be for one year and would have to re-evaluated.

33. On July 22, 2021, Plaintiff sent an email to Ms. Helbig stating the following:

> I am back in today but the unnecessary stressors manufactured by USLI have not gotten any better. These stressors played a role in what sent me into the worst mental health episodes that I have ever experienced, which greatly impacted my mental health, overall health, and my family's health and overall well-being. One of my concerns is that since Claims is shorthanded, the stressors will only get worse.

34. Ms. Helbig did not respond.

35. However, Plaintiff received an email from Jim Scalise after Ms. Helbig forwarded the foregoing email to him.

36. Mr. Scalise advised Plaintiff that " . . . [w]e are committed to working with you and the other Claims Examiners on trying to alleviate unnecessary stressors . . ." and that " . . . there are things that we might be able to do in the interim to address those concerns, but we need to have a meeting to discuss what those options might be."

37. Mr. Scalise also advised Plaintiff that they could " . . . also discuss whether you need any additional accommodations. Janet will find a convenient time for all of us to discuss and will send out a meeting planner."

38. Three days later, Mr. Scalise, Ms. Helbig and Plaintiff had a video meeting in which Mr. Scalise threatened Plaintiff.

39. Mr. Scalise advised Plaintiff never to put anything in writing again and that he would have "action taken" against him if he spoke out to anyone else about his PTSD issues.

40. Mr. Scalise also advised Plaintiff "before you put anything in writing, go scream at your wife or yell into a pillow."

41. Nothing new was done to accommodate Plaintiff after the foregoing meeting.

42. A few weeks later, during his 2021 review, Plaintiff advised Helbig he felt he was being targeted due to his medical condition and requests for accommodation, and that he was paranoid as a result of the behavior of his supervisors.

43. Plaintiff's end of year pay increase and bonus for 2021 were also cut in half as a result of his disability and his FMLA leave.

44. Non-disabled employees who did not utilize FMLA leave made more money than Plaintiff and also received higher pay increases.

45. Plaintiff was told the reason his increase was only 2.5 percent rather than 5 percent was that his "pending" files were too low.

46. This fact was not indicative of Plaintiff's performance, but was actually an indication of Plaintiff clearing claim files quickly (which was the point of his job).

47. This was also a result of Defendant' decision to transfer Plaintiff many new claims so existing team members could work on getting their "pending" files down.

48. Plaintiff was assigned 251 claim files through November of 2021, while other claim representatives received far less that year (between 131 and 195).

49. Plaintiff's file closing ratio was still very high.

50. Defendant took the foregoing actions by design and with the intent to set Plaintiff up to fail.

51. Plaintiff went out on FMLA leave again in January 2022.

52. Plaintiff has suffered an exacerbation of his PTSD as a result of the stress caused by Defendant's behavior toward him.

53. Plaintiff's employment was terminated by Defendant on September 14, 2022.

**Count One**
**Family and Medical Leave Act (Interference and Retaliation)**
**Plaintiff v. All Defendants**

54. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55. When an employee invokes rights under the Family and Medical Leave Act (FMLA), an employer may not interfere with, restrain, or deny exercise or attempted exercise of those rights, nor may it discharge or discriminate in any other manner against an employee for opposing any practice made unlawful by the FMLA. *See* 29 USC §§ 2615(a) (1) and (a)(2).

56. The two aforesaid provisions are generally referred to as forbidding: (a) "interference" with the exercise of FMLA rights; and (b) "retaliation" for exercising same.

57. Although the foregoing provisions do not expressly forbid employers from terminating employees for exercise or attempted exercise of FMLA rights, the United States Department of Labor has interpreted the two provisions to mandate this result, *see* 29 CFR § 825.220(c), and the federal courts have consistently followed this interpretation.

58. At all times relevant hereto, Defendant was an "employer" under the FMLA because it employed at least 50 individuals within a 75-mile area at all times relevant herein.

59. At all times relevant herein, Plaintiff was an "eligible employee" as that term is defined in the FMLA, *see* 29 U.S.C. § 2611(2)(A)(i)-(ii), because he worked for Defendant for a

period in excess of 12 months and because he worked at least 1,250 hours in the one-year period prior to his Family and Medical Leave Request as aforesaid.

60. By its actions as aforesaid, Defendant violated the Family and Medical Leave Act (FMLA) in that it interfered with the exercise of Plaintiff's FMLA rights and retaliated against Plaintiff for exercising those rights.

61. As a result of Defendants' actions as aforesaid, Plaintiff has sustained lost wages, lost benefits and other economic damages, as well as an exacerbation of his medical condition.

62. As a result of Defendants' actions in violation of the FMLA, Plaintiff is entitled to reasonable attorneys' fees and costs.

63. Plaintiff has also filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on June 8, 2022, has also filed amended Charges, and will amend the instant Complaint to include claims under the Americans with Disabilities Act (ADA) when he receives a Notice of Right to Sue on same.

***AD DAMNUM CLAUSE***

WHEREFORE, Plaintiff respectfully requests the Court to grant him the following relief:

A. That a judgment be entered against Defendant on the claims set forth herein;

B. That Plaintiff be awarded actual damages, including front pay and back pay;

C. That Plaintiff be awarded liquidated damages in the form of double the amount of back and front pay the Court awards pursuant to the FMLA;

D. That Plaintiff be granted all other legal, equitable or injunctive relief the Court may deem just and proper;

E. That Plaintiff is to be awarded the costs and expenses of this action;

F. That Plaintiff be awarded reasonable attorneys' fees;

G. That Plaintiff's claims against Defendants be tried to a jury to the extent permitted by applicable law.

Respectfully submitted,

WAYNE A. ELY

BY: /S/ Wayne A. Ely

Wayne A. Ely, Esquire
Attorney for Plaintiff
225 Lincoln Highway
Building A, Suite 150
Fairless Hills, Pennsylvania 19030
(215) 801-7979

December 14, 2022