IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY STEIDLE | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 22-4972 |
| | : | |
| UNITED STATES LIABILITY | : | |
| INSURANCE CO., INC. | : | |

## MEMORANDUM

**Judge Juan R. Sánchez**                                                                                    **October 1, 2024**

From May 2013 to September 2022, Plaintiff Jeffrey Steidle was a full-time employee for Defendant United States Liability Insurance Co., Inc. ("USLI"). In January 2022, Steidle took approved medical leave from his position with USLI for post-traumatic stress disorder ("PTSD"). In September 2022, after more than eight months of leave, USLI terminated Steidle when his medical provider could not provide a return-to-work date, with or without accommodations. Steidle brings claims for discrimination under the Americans with Disabilities Act ("ADA") and retaliation under the ADA and the Family and Medical Leave Act ("FMLA"), arguing USLI discriminated and retaliated against him for exercising his rights under the FMLA and ADA. USLI moves for summary judgment, arguing (1) Steidle did not suffer any adverse employment action while he was a qualified individual under the FMLA and ADA, and (2) because Steidle could not work, even with accommodations, he was no longer a qualified individual when USLI terminated his employment. The Court agrees. Therefore, USLI's motion for summary judgment will be granted and judgment will be entered in its favor.

## BACKGROUND[1]

---

[1]         Unless otherwise noted, the parties do not dispute the following facts.

Jeffrey Steidle served in the United States Marine Corps from 2000 to 2004. Def.'s Concise Statement Material Facts (hereinafter "Def.'s Facts") ¶ 3, ECF No. 18. During his service, Steidle was deployed in active combat zones. Dep. J. Steidle 29:17-25 – 31:7, 32:12-15, 37:11-18, ECF No. 19-1 at 9-11.[2] When he returned, Steidle had PTSD symptoms. *Id.* at 41:3-5, ECF No. 19-1 at 12. But he "minimized his symptoms of PTSD for many, many years." VA Progress Notes, Mar. 17, 2022, VA_00037, ECF No. 24 at 3. In 2010, Steidle began treatment with a psychiatrist in the United States Department of Veterans Affairs (the "VA") and was diagnosed with major depressive disorder. Def.'s Facts ¶ 5, ECF No. 18. With treatment, however, Steidle completed a bachelor's degree in finance at Cabrini College in May 2013. Dep. J. Steidle 24:5-15, ECF No. 19-1 at 8. During his last year at Cabrini, USLI hired Steidle to work in its College Help Program.[3] Def.'s Facts ¶ 2, ECF No. 18.

When Steidle graduated from college in May 2013, USLI hired him into a full-time position as a Claims Examiner Trainee on the Casualty Claims team. Dep. J. Steidle 24:10-13, ECF No. 19-1 at 8; Def.'s Facts ¶ 6, ECF No. 19. The Casualty Claims team handled general liability claims dealing with property damage and bodily injury. Def.'s Facts ¶ 8, ECF No. 19. Steidle reported to Vice President of Claims, Janet Helbig. *Id.* Steidle developed a close relationship with Helbig and was open with her about his depression, mental health, and medication. *Id.* ¶ 9; *see also* Dep. J. Steidle 90:14-91:5, 92:15-93:2, ECF No. 19 at 25. He remained on Helbig's team until November 2019, when he transferred to another team at USLI. During the six years from his hiring in 2013

---

[2]    Citations to the record include pin cites to both the exhibit's self-pagination and to the ECF pagination for ease of reference.

[3]    USLI is an insurance company which specializes in low premium, low hazard specialty insurance products for small businesses, non-profit organizations, and special events. USLI is a member of the Berkshire Hathaway family of companies. Def.'s Facts ¶ 1, ECF No. 18.

to his transfer in 2019, Steidle had no issues with his treatment at work. Dep. J. Steidle 80:14-20, ECF No. 19-1 at 22. He was promoted twice and received annual salary raises and bonuses.[4]

    In November 2019, Steidle transferred from the Casualty Claims team to the Liquor Liability team overseen by Ann Lacey. Def.'s Facts ¶ 19, ECF No. 18. Steidle held the same position and received the same salary and benefits as before. *Id.* ¶ 22. He transferred teams, however, to diversify his claims experience. Decl. J. Helbig ¶ 4, ECF No. 19-3; *see also* Dep. J. Steidle, 183:9-12, ECF No. 19-1 at 48. The Liquor Liability team handled general liability claims dealing with property damage and personal liability from alcohol use for bars and restaurants. Def.'s Facts ¶ 20, ECF No. 18. Four months later, Steidle received his first performance evaluation on Lacey's team. 020 Q1 Semi-Annual Self-Examination/Performance Feedback (Individual) (hereinafter "Performance Eval."), USLI000127-131, ECF No. 19-2 at 21-25. His skills ratings ranged from 3-5 (out of a 1-5 scale), and Steidle's self-assessment noted his challenges "learning the new products and forms." *Id.* at USLI000129, ECF No.19-2 at 23. Lacey's comments were generally positive but also noted Steidle "has been getting used to a new pending list of claims." *Id.* She further noted he had missed some deadlines. *See id.* at USLI000129-130, ECF No. 19-2 at 23-24.

---

[4]    In April 2015, Steidle was promoted to Associate Claims Examiner, and received an 8% salary increase with the promotion. Def.'s Facts. ¶¶ 10-11, ECF No. 18; *see also* Salary Adjustment Authorization form (hereinafter "Salary Adj. Auth."), Apr. 24, 2015, USLI000226, ECF No. 19-2 at 32. In December 2015, Steidle received a 14% salary increase and a $5,500 bonus, effective at year end 2015. Salary Adj. Auth., Dec. 1, 2015, USLI000225, ECF No. 19-2 at 31. The next year, in November 2016, he received a 4.9% salary increase and a $6,500 bonus, effective December 12, 2016. Salary Adj. Auth., Nov. 29, 2016, USLI000224, ECF No. 19-2 at 30. And in January 2017, Steidle was promoted again to Claims Examiner. Def.'s Facts ¶ 14, ECF No. 18. He received a 7.03% salary increase with this promotion. Salary Adj. Auth., Jan. 12, 2017, USLI000223, ECF No. 19-2 at 29. In November 2017, Steidle received a 4.9% salary increase and a $7,000 bonus, effective in January 2018. Salary Adj. Auth., Nov. 29, 2017, USLI000222, ECF No. 19-2 at 28. And in November 2018, he received a 4.5% salary increase and a $7,000 bonus, effective in January 2019. Salary Adj. Auth., Nov. 28, 2018, USLI000221, ECF No. 19-2 at 27.

While Steidle was working on Lacey's team, he began to experience more severe mental health symptoms and was diagnosed with PTSD and anxiety. Dep. J. Steidle 48:6-9, ECF No. 19-1 at 24 ("Q. Do you know when [Dr. Choi] diagnosed you with PTSD? A. So, I believe, maybe 2019 . . . but then it really developed from 2020, you know, on."); *see also id.* at 93:2-3, ECF No. 19-1 at 14 ("[W]hen I started having the severe symptoms, I was working for Annie Lacey."). Steidle later told a VA psychiatrist his symptoms were "triggered by pandemic worries, political divide, 20th anniversary of 9-11, [and] events in Afghanistan." VA Progress Notes, May 14, 2022, 24, ECF No. 21-3 at 1. He further reported "the work environment had become hostile and completely non-supportive of his mental health issues/disability. . . . Stress of work environment contributed to increasing exa[ce]rbation of depression and anxiety." *Id.*

The parties dispute when Lacey learned of Steidle's disability. Steidle claims he told her in May or June of 2020. *Id.* at 91:24-92:4, ECF No. 19-1 at 24. Lacey, however, does not remember learning Steidle had PTSD until after his third quarter performance evaluation. Dep. A. Lacey 11:10-15, 12:13-17, ECF No. 19-5 at 5. Regardless, Steidle's work suffered because of his mental health. *See, e.g.*, Dep. J. Steidle 203:8-10, ECF No. 19-1 at 53.  Steidle and Lacey met to discuss his Q3 performance evaluation on September 28, 2020. *Id.* 260:14-261:15, ECF No. 19-1 at 106; *see also* Jeff – 3rd Qtr Review calendar invitation, USLI002168, ECF No. 19-2 at 85. As compared to his first quarter evaluation, Steidle received slightly lower ratings in three out of five skills categories. *See* 2020 Q3 Performance Eval., USLI000120-125, ECF No. 19-2 at 15-20. Lacey's comments indicated Steidle needed to improve in his claim handling and file management, consistency, and timeliness.[5] *See id.* Lacey also wrote: "I would like Jeff to communicate more

---

[5]     Lacey also included numerous positive comments. *See, e.g.*, *id.* at USLI000121, ECF No. 19-2 at 16 ("Jeff is a valued team and community contributor" who "is filling an important role

4

openly about his struggles and what I can do to support him in achieving better success for his job responsibilities[.]" *Id.* at USLI000121, ECF No. 19-2 at 16. Steidle believes this comment referenced his disability.[6] Dep. J. Steidle 201:12-203:24, ECF No. 19-1 at 52-53. He also believes Lacey did not understand how his mental health impacted his work, *id.* 203:8-18, 205:25-206:7, 206:19-10, ECF No. 19-1 at 53-54, and that she did not help him, *id.* 210:2-10, ECF No. 19-1 at 55. But Steidle did not request any accommodation while he was on Lacey's team. *See* Dep. A. Lacey 12:4-6, ECF No. 19-5 at 5.

Two days after Steidle's Q3 evaluation, he texted Helbig and asked to talk. Helbig and Steidle Text Messages, Sept. 30 – Oct. 6, 2020, ECF No. 19-6. They spoke the following morning, and Steidle requested to return to Helbig's team. *Id; see also* Dep. J. Steidle 221:20-22, ECF No. 19-1 at 57. Helbig had an opening on her team and agreed to the request. Dep. J. Steidle 221:23-25, ECF No. 19-1 at 57; *see also* Dep. J. Helbig 9:5-22, ECF No. 19-7 at 2; Helbig and Scalise E-Mails, Oct. 1-2, 2020, ECF No. 19-2 at 69-73. Before Steidle could return to her team, however, he requested and was approved for medical leave, retroactively effective October 1, 2020 (the same day he spoke with Helbig), until November 16, 2020. *See* Dep. J. Steidle 220:9-19, ECF No. 19-1 at 57 (confirming he requested FMLA leave due to PTSD "flare-ups); Dep. A. Lacey 11:20-22, 15:19-21, ECF No. 19-5 at 5, 6 (recalling an October 2020 email from Steidle in which he

---

within our team."); *see also id. at* USLI000123, ECF No. 19-2 at 18 ("Jeff exhibits a positive attitude and contributes to the comraderie [sic] within our team.").

[6]     Later in the evaluation, Lacey wrote Steidle "continues to struggle acclimating to his pending" and "Jeff was candid about struggling with his workload." 2020 Q3 Performance Eval., USLI000122, 124, ECF No. 19-2 at 17, 19. And at her deposition, Lacey stated her comments referred to Steidle's "struggles in maintaining his desk[,] in keeping current his files." Dep. A. Lacey 12:18-13:3, ECF No. 19-5 at 5. (She then explained "maintaining his desk" meant "handling his core job responsibilities" and "managing the claim files that he was assigned." *Id.* at 12:6-12.). The parties thus dispute the meaning of her first comment about Steidle's "struggles."

"said he was struggling with depression, anxiety and PTSD" and told her "he might need to take time off."); Helbig and Steidle Text Messages, Sept. 30 – Oct. 6, 2020, ECF No. 19-6 at 3 (discussing Steidle's need to take time off for his health); Helbig and Scalise E-Mails, Oct. 1-2, 2020, ECF No. 19-2 at 69-73 (discussing Steidle's transition between teams and his need to rest and potentially take time off); Steidle and Rodgers E-Mails, Oct. 13-15, 2020, ECF No. 19-2 at 34 (discussing FMLA paperwork and Steidle's tentative return date); Cert. Health Care Provider, Oct. 15, 2020, ECF No. 19-2 at 36-39. On November 11, 2020, Steidle requested an extension of his FMLA leave through December 20, 2020, which USLI approved. E-Mail Steidle to Rodgers, Nov. 11, 2020, ECF No. 19-2 at 40; Dep. J. Steidle 220:9-21, ECF No. 19-1 at 57.

On November 19, 2020, while Steidle was out on FMLA leave, Lacey approved Steidle's annual salary adjustment.[7] Salary Adj. Auth., Nov. 19, 2020, USLI000219, ECF No. 19-2 at 26; *see also* Dep. A. Lacey 21:20-24, ECF No. 19-5 at 7. Helbig communicated the changes to Steidle: a salary increase of 2.5% and a bonus of $3,000, effective January 1, 2021. *Id*. At her deposition, Lacey indicated she cut his salary increase and bonus from prior years (*see supra* note 4) because Steidle's "performance was not where it needed to be." Dep. A. Lacey 22:17-21, ECF No. 19-5 at 8. She further elaborated that his performance issues included "[h]aving to follow up with him on multiple issues . . . late responses to diaries[, and] [n]ot maintaining his desk the way it should be." *Id*. 22:22-23:4, ECF No. 19-5 at 8. But Steidle believes these amounts were lower than in previous years because of his leave or disability. Dep. J. Steidle 269:3-270:2, ECF No. 19-1 at 108-09.

---

[7]     Jeani Rodgers, USLI's then Second Vice President for Personal Development, "reached out" to Steidle while he was on leave and "asked if it would be okay for Janet to contact [him] and communicate [his] pay and bonus . . . for the next year." Dep. J. Steidle 271:12-15, ECF No. 19-1 at 109.

On December 21, 2020, Steidle returned from leave and reported to Helbig on the Casualty Claims team until January 2022. *Id.* 286:18-287:1, ECF No. 19-1 at 113; *see also id.* 226:14-25, ECF No. 19-1 at 59. In April 2021, Steidle received his first quarter evaluation from Helbig—which Steidle agreed was generally positive. 021 Q1 Performance Eval, USLI000115-119, ECF No. 19-2 at 10-14; *see* Dep. J. Steidle 146:3-150:14, ECF No. 19-1 at 39-40. On May 7, 2021, Steidle emailed Helbig to request two accommodations: (1) continue to work remotely if USLI reopened the office and (2) an adjusted schedule of 7:00 am to 3:00 pm .[8] Steidle and Helbig E-mails, May 7, 2021, USLI001137, ECF No. 19-2 at 65. Helbig responded that same day and asked Steidle to provide a doctor's note supporting the requested accommodations. *Id.* On May 24, 2021, Steidle provided the requested doctor's note and USLI approved the accommodations that same day. Steidle and Helbig E-mails, May 24, 2021, USLI000324-325, ECF No. 19-2 at 41-42; Dep. J. Steidle 134:9-21, ECF No. 19-1 at 36.

On July 21 and 22, 2021, Steidle sent a series of emails to Helbig complaining about "unnecessary stressors" by USLI that impacted his mental health and job performance. Steidle E-mails, July 21-22, 2021, USLI001106, USLI001116, ECF No. 19-2 at 56-57; Dep. J. Steidle 106:15-107:21, ECF No. 19-1 at 29. Among his complaints were: an email from a college intern to Steidle using the phrase ASAP,[9] short-staffed Claims department, an email from Helbig informing the Claim Examiners on her team that USLI monitors their phone calls and will know

---

[8]     All employees, including Steidle, were working from home at this time. Dep. J. Steidle 126:9-14, ECF No. 19-1 at 34.

[9]     The email from the college intern to Steidle read: "I am following up about outstanding invoices from [redacted]. My understanding is that you are handling this claim. Please process payments ASAP and copy me on the payment request email. Please review and process the payments no later than 7/23/21." College Intern E-mail, July 20, 2021, USLI001118, ECF No. 19-2 at 59.

if they have call forward on,[10] and changes in procedures for all Claim Examiners. Dep. J. Steidle 101:18-106:7 (discussing changes to claim procedures for all Claim Examiners), 136:1-141:24 (discussing administrative support and Helbig's email regarding phones), 173:2-8 (discussing short-staffing), ECF No. 19-1 at 27-29, 36-37, 45. Helbig forwarded the emails to her supervisor, Jim Scalise—Executive Vice President and Chief Claims Officer. Scalise and Helbig E-mails, July 22, 2021, USLI001351-1352, ECF No. 19-2 at 74-75. Scalise responded that same day and proposed a meeting between all three parties. Scalise and Steidle E-mails, July 22, 2021, USLI001192-1193, ECF No. 19-2 at 66-67. The next day, Steidle met with Helbig and Scalise to discuss his concerns.  Dep. J. Steidle 173:17-174:6, ECF No. 19-1 at 45-46; Dep. J. Scalise 22:12-25:6, ECF No. 19-9 at 3; Dep. J. Helbig 21:2-22, ECF No. 19-8 at 3. There is some dispute about what happened at the meeting. Steidle alleges Scalise "threatened" him on the call for sending the initial email.[11] Dep. J. Steidle 174:2-176:10, ECF No. 19-1 at 46.  Scalise says he only commented on the tone of the email and suggested Steidle talk to someone to avoid any misinterpretations.[12] Scalise and Helbig E-mails, July 23, 2021, USLI001100-1102, ECF No. 19-2 at 53-55 (recapping the meeting). It is not disputed, however, that Steidle faced no disciplinary measure and continued to work as before, and the three discussed his initial concerns.[13] *See id.*; Dep. J. Steidle 108:1-14,

---

[10]     *See* Helbig Email, June 11, 2021, ECF No. 19-8 at 2.

[11]     "Well, so, Jim comes on and he basically just goes … he told me how he tells his teenage kids not to send emails like that …. I don't know if berating is the right word, but it was very unprofessional …. He told me to go…to scream at my wife, you know …. Like he was very specific not to put anything in writing." Dep. J. Steidle 174:2-176:4, ECF No. 19-1 at 46.

[12]     "I only asked him that if he feels that the tone of his conversations are going to be that of the nature of his emails, that he not vent his frustration in an email, but rather reach out to us to discuss as I am sure he does not want to write anything he will regret later." Scalise and Helbig E-mails, July 23, 2021, USLI001100, ECF No 19-2 at 53.

[13]     "Q: Did you ever face formal discipline from this situation? A: No. Formal discipline? Q: Did you receive a written warning? A: No. Q: Did you receive a performance improvement plan? A: No. Did you receive a verbal warning? A: No." Dep. J. Steidle 108:6-14, ECF No. 19-2 at 29.

ECF No. 19-2 at 29. On September 28, 2021, Steidle received his third-quarter performance evaluation from Helbig.[14] 021 Q3 Performance Eval., USLI000106-110, ECF No. 19-2 at 5-9. Shortly thereafter, he received a bonus and salary increase, effective January 2022, that was higher than his bonus in 2021 but lower than previous years.[15] *See* Dep. J. Steidle 277:15-278:25, ECF No. 19-1 at 110-111. According to Helbig, the bonus decision was based on Steidle's involvement in the USLI community, the complexity of claims he worked on, and his relatively high salary. Decl. J. Helbig ¶ 6, ECF No. 19-3 at 2-3. He continued to work in the same role until January 2022. *See* Dep. J. Steidle 236:15-21, ECF No. 19-1 at 61.

On January 9, 2022, Steidle requested and was granted FMLA leave from January 10, 2022, to April 3, 2022, due to his mental health. Steidle FMLA Leave Request, January 9, 2022, USLI000333-337, ECF No. 19-2 at 43-47; Dep. J. Steidle 301:3-10, ECF No. 19-1 at 116. On March 30, 2022, Steidle requested and was granted an indefinite extension of his medical leave.[16] Steidle FMLA Extension, March 30, 2022, USLI000340-341, ECF No. 19-2 at 48-49; Dep. J. Steidle 301:11-19, ECF No. 19-1 at 116. On July 27, 2022, Steidle sent a doctor's note to USLI stating he can return to work with accommodations. Steidle Doctor's Note, July 21, 2022, ECF No. 19-10. Jeani Rodgers and Steidle exchanged emails discussing Steidle's return—he requested

---

[14]     Steidle agrees the review was not negative. *See* Dep. J. Steidle 234:12-236:10, ECF No. 19-1 at 61.

[15]     *See supra* note 4 for history of bonuses and salary increases. Steidle believes the bonus and salary decision was retaliation: "[W]hile I was on medical leave, my pay and bonus were . . . reduced. And then when I came off of medical leave, you know, basically I was treated different." Dep. J. Steidle 98:10-14, ECF No. 19-1 at 27.

[16]     On March 29, 2022, Steidle applied for VA disability benefits for service-connected PTSD with major depressive disorder and generalized anxiety. Dep. J. Steidle 60:10-16, ECF No. 19-1 at 17. On June 30, 2022, the VA Benefits Administration determined Steidle was permanently and totally disabled as of March 29, 2022. VA Benefits Decision, ECF No. 19-11. Steidle understood this meant he was unable to work as of March 29, 2022. *See* Dep. J. Steidle 65:11-67:12, ECF No. 19-1 at 18-19.

the following three accommodations: (a) reduced hours, resulting in him working four hours per day for a 20-hour workweek; (b) a Comtrend phone adapter to assist him in working remotely and be allowed to use the call forward feature as needed; and (c) permission to record all meetings. Steidle and Rodgers E-mails, July 27-28, 2022, USLI001989-1990, ECF No. 19-2 at 83-84. USLI approved the reduced hours and phone adapter on August 2, 2022. Steidle and Rodgers E-mails, August-September 2022, USLI001985-1988, ECF No. 19-2 at 79-82.  After some discussion about Steidle's request to record meetings, USLI denied the request because of "confidential information" discussed at meetings but suggested Steidle take notes during meetings as an alternative. *Id*. at 81. Steidle never returned to work using the granted accommodations. Dep. J. Steidle 321:22-24, ECF No. 19-1 at 121. Rather, Steidle submitted another doctor's note on August 22, 2022, stating he can no longer return to work. Steidle Doctor's Note, August 19, 2022, ECF No. 19-2 at 76. USLI responded four days later requesting clarification on his ability to return to work. Steidle and Rodgers E-mails, August-September 2022, USLI001985-1986, EXF No. 19-2 at 79-80. On September 9, 2022, Steidle provided a new letter from his medical provider recommending he remain on medical leave. *Id*. at 79; Steidle Doctor's Note, September 8, 2022, USLI001980, ECF No. 19-2 at 77. USLI responded the same day asking for an anticipated return-to-work date. *Id*. at 79. On September 13, 2022, Steidle provided another letter from his medical provider requesting an indefinite medical leave of absence.[17] Steidle Doctor's Note, September 13, 2022, USLI001981, ECF No. 19-2 at 78. The next day, USLI determined it could not grant his request for continued indefinite leave of absence and terminated him. Steidle Termination Letter,

---

[17]     "[Steidle] is not medically stable to return to his role at USLI. Posttraumatic Stress Disorder is a chronic condition with intermittent flares. He has been actively engaged in treatment and his response to treatment has been positive, but I am unable to provide accurate prognostic information at this time. I therefore cannot provide an estimated return to work date." Steidle Doctor's Note, September 13, 2022, USLI001981, ECF No. 19-2 at 78.

USLI000238, ECF No. 19-2 at 33. Since the termination, Steidle has not worked or applied for any jobs. Dep. J. Steidle 354:9-12, ECF No. 19-2 at 130.

**PROCEDURAL HISTORY**

Steidle initiated this suit on December 14, 2022, and USLI filed its initial answer on February 21, 2023. ECF Nos. 1, 3. Steidle then filed an Amended Complaint on March 13, 2023, and USLI filed an answer to the Amended Complaint on March 27, 2023. ECF Nos. 5, 8. The Honorable Gene E.K. Pratter held a Rule 16 Conference the same day. ECF No. 9. On March 29, 2023, Judge Pratter entered the first Scheduling Order in this matter; she entered First and Second Amended Scheduling Orders on July 21, 2023, and on September 6, 2023, extending all deadlines. ECF Nos. 11, 12. On September 14, 2023, USLI filed a motion to compel Steidle's discovery responses. ECF No. 13. Following a telephone conference on October 3, 2023, Judge Pratter mooted the motion without prejudice. ECF No. 16. USLI filed a motion for summary judgment and supporting materials on November 8, 2023. ECF Nos. 17-19. Steidle filed a response in opposition on December 8, 2023. ECF No. 21. And USLI filed reply materials on December 15, 2023. ECF Nos. 22-24. On May 21, 2024, this matter was reassigned from Judge Pratter to the undersigned.[18] Oral arguments were held on July 1, 2024. The motion is now ripe for review.

**STANDARD OF REVIEW**

A court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

---

[18] From January to May 2024, Judge Pratter rescheduled oral argument on the motion and the final pretrial conference several times. In accordance with the prior scheduling order, the parties filed their pretrial motions in January 2024. *See* ECF Nos. 25, 27.

supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Only material facts which "might affect the outcome of the suit under the governing law" will preclude summary judgment. *Id*. at 248. When considering a motion for summary judgment, the court must "view all facts in the light most favorable to the non-moving party and draw all inferences in that party's favor." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).

**DISCUSSION**

Steidle brings a claim for discrimination under the ADA, 42 U.S.C. § 12101, *et seq.*, and for retaliation under the ADA and the FMLA, 29 U.S.C. § 2601, *et seq.*[19] The parties agree Steidle is disabled under the ADA. They also agree he was unable to work, with or without accommodations, as of March 29, 2022, and that he requested a term of indefinite leave on September 13, 2022. In moving for summary judgment, USLI argues (1) he did not suffer any adverse employment actions when he was a qualified individual, and (2) he was not a qualified individual at the time of his termination. Def.'s Br. Supp. Mot. Summ. J. 13-15, ECF No. 17-2. In response, Steidle argues genuine issues of material fact remain as to whether USLI "exacerbated" and "caused" his disability and inability to work. Pl.'s Mem. Law Resp. 7, ECF No. 21-1.

Discrimination claims brought pursuant to the ADA are governed by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995). Under this framework, a plaintiff must first establish a prima facie case by showing "(1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations,

---

[19]     The Amended Complaint also asserted a claim for interference under the FMLA. Am. Compl. 6-7, ECF No. 5. In briefing, counsel for Steidle confirmed he is withdrawing the FMLA interference claim. *See* Pl.'s Mem. Law Resp. 7, ECF No. 21-1.

and (3) that he was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). If the plaintiff makes a prima facie case, the burden of production shifts to the defendant to offer a legitimate, nondiscriminatory reason for its action. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). And if the defendant satisfies this "relatively light" burden, the burden of production shifts back to the plaintiff to "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." *Id.*

The Court first considers whether Steidle suffered an adverse employment action prior to March 29, 2022.[20] "An adverse employment action is one that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Cunningham v. Nordisk*, 615 F. App'x 97, 100 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)). "When an employee's salary, reporting requirements, and general duties remain the same, there is typically insufficient evidence of an adverse employment action. . . . The core inquiry is whether a reasonable jury could determine that the employee's employment was substantially worsened." *Jakomas v. City of Pittsburgh*, 342 F. Supp. 3d 632, 643 (W.D. Pa. 2018).

After informing his direct supervisor of his PTSD and taking leave, Steidle returned to the same job and continued to receive pay increases and bonuses. *See Cunningham*, 615 F. App'x at 100. But he argues he received lower salary increases and bonuses at the end of 2019 and 2020 (effective in 2020 and 2021, respectively) because of his FMLA leave and/or disability. This

---

[20]     Steidle's response does not address USLI's first argument vis-à-vis his ADA discrimination claim. He does, however, argue that his lower salary increases and bonuses in 2020 and 2021 constitute adverse employment actions for the purposes of his retaliation claims. *See* Resp. Opp'n 9-10, ECF No. 21-1.

argument is unsupported by the facts of this case. Steidle's salary increases and bonuses were discretionary and changed from year to year. And while he points to the timing of his 2020 salary adjustment and bonus—USLI informed him of the changes in November 2019, while he was out on FMLA leave—this timing is consistent with his salary adjustments from 2013 to 2018. The argument is also unsupported by case law. *See, e.g., Tucker v. Merck & Co., Inc.*, 131 F. App'x 852, 857 (3d Cir. 2005) ("a lower than expected merit wage increase or bonus probably does not constitute an adverse employment action."); *see also Tourtellotte v. Eli Lilly and Co.*, 636 F. App'x 831, 845 (3d Cir. 2016) (concluding "receipt of a less than expected merit increase does not constitute a material change in the terms or conditions of employment, and is subsequently not an adverse employment action" in a Title VII discrimination case). For the purposes of a discrimination claim, Steidle's lower-than-expected salary increases and bonuses for 2020 and 2021 did not constitute adverse employment actions.

The meeting with Scalise was also not an adverse employment action because it was, at worst, a stray remark. "Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992). While there is a factual dispute as to what Scalise said at the meeting, such a dispute is not material to the analysis. Scalise was not Steidle's supervisor and never made a decision about his employment—e.g., bonuses, salary increases, termination, etc. Based on the record, the meeting was the only relevant interaction between Scalise and Steidle. After the meeting, Steidle did not receive any formal or informal punishment. He continued his employment for more than a year after the interaction. In fact, the record suggests the meeting addressed, at least, some of Steidle's concerns. Accordingly, the meeting was not an adverse employment action.

The Court turns to consider USLI's second argument: that Steidle was not a qualified individual under the ADA when USLI terminated his employment. As stated above, there is no dispute over the relevant facts. The parties agree Steidle was unable to work, with or without accommodations, as of March 29, 2022 due to the VA Benefits Decision that categorized him as occupationally disabled, and that he requested a term of indefinite leave on September 13, 2022, prior to termination. According to Steidle, however, because USLI "contributed to the exacerbation of his medical condition," it cannot now argue he was not a qualified individual when he was terminated. Pl.'s Mem. Law Resp. 3, ECF No. 21-1. Steidle does not cite any case law in support of this proposition. *See id*. at 3-7. Steidle's argument fails for two reasons. First, the medical report he relies on is not an independent finding by his doctor but rather a record of what Steidle told his doctor. Second, and most importantly, there is no case law to support this broad interpretation of the ADA. Accordingly, the Court declines the invitation to interpret the ADA in such a manner.

The Court now turns to the retaliation claims. ADA and FMLA retaliation claims are subject to the same *McDonnell Douglas* burden shifting analysis as the discrimination claim. *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 n.3 (3d Cir. 2004) (ADA); *Branch v. Temple Univ.*, 554 F. Supp. 3d 642, 661 (E.D. Pa. 2021) (FMLA). To establish a prima facie claim of retaliation under either statute, a plaintiff must show "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir. 1997); *see also Branch*, 554 F. Supp. 3d at 662 (citing *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012)).

Steidle cannot meet his prima facie burden because no adverse employment action was taken against him, nor can he establish causation. An adverse employment action "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (citations omitted). As stated above, the meeting with Scalise did not result in any change in Steidle's status as an employee at USLI. While the "receipt of a less than expected merit increase could rise to the level of an adverse employment action" in the retaliation context, there is nothing in the record to show Steidle's performance in 2019 and 2020 merited a higher discretionary bonus and salary increase than what he received. *See Tourtellotte*, 636 F. App'x at 845 n.6.

A causal connection may be established by "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Steidle argues the 2019 bonus decision establishes causal connection because it was issued while he was on FMLA leave, and the evaluations and bonus decisions thereafter demonstrate a pattern of antagonism. Pl.'s Mem. Law Resp. 10-14, ECF No. 21-1. Steidle's argument fails for a few reasons. First, the 2019 bonus decision was made in November 2019, which was consistent with every bonus decision made about Steidle from 2013 to 2018. The record suggests it was USLI's common practice to make bonus decisions late in the year. Second, Lacey testified her evaluation of Steidle at the end of 2019 was in reference to his work rather than any mental health issues. This was consistent with Steidle's self-evaluation during that time because he was "learning the new products and forms" as a new member of Lacey's team. ECF No. 19-2 at 23. Finally, Helbig testified she made the 2020 bonus decision based on Steidle working

16

on less complex claims, his decreased involvement in the USLI community, and his high salary. In fact, Steidle received a higher bonus and salary increase under Helbig than the previous year under Lacey. Accordingly, Steidle fails to meet his prima facie burden because there was no adverse employment action or causal connection.

**CONCLUSION**

In sum, because Steidle did not suffer any adverse employment action and was no longer a qualified individual when USLI terminated him, USLI's motion for summary judgment will be GRANTED and judgment entered in its favor.

An appropriate Order follows.

BY THE COURT:


<u>/s/ Juan R. Sánchez</u>
Juan R. Sánchez, J.

17